UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY A. V.[1],

Plaintiff,

Civil Action No. 25-11293

v.

David R. Grand
United States Magistrate Judge[2]

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________________/

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 13)**

Plaintiff Anthony A. V. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions. (ECF Nos. 10, 13).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Thus, Plaintiff's Motion for Summary Judgment **(ECF No. 10)** will be **DENIED**; the Commissioner's Motion for Summary Judgment **(ECF No. 13)** will be **GRANTED**; and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 7).

the decision of the Commissioner of Social Security will be **AFFIRMED**.

**A. Background**

Plaintiff was 34 years old at the time of his alleged onset date of February 1, 2019, and at 6'0" tall weighs approximately 230 pounds. (PageID.284, 291).[3] He completed high school but has no further education. (PageID.61, 292). He worked as an industrial painter and then a factory shop supervisor for several years, before he stopped working in February 2019 because of his medical conditions. (PageID.62, 64-69, 71, 291-92). He now alleges disability primarily as a result of back and neck pain, panic disorder, and post-traumatic stress disorder ("PTSD"). (PageID.62, 291, 332).

After Plaintiff's applications for DIB and SSI were denied at the initial level on April 27, 2022 (PageID.124-27, 129-32), and on reconsideration on March 17, 2023 (PageID.141-43, 145-47), he timely requested an administrative hearing, which was held on March 8, 2024, before ALJ Christopher Mattia (PageID.57-78). Plaintiff, who was represented by attorney Wesley Lamey, testified at the hearing, as did vocational expert ("VE") Pauline McEachin. (*Id.*). On April 30, 2024, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (PageID.36-49). On March 5, 2025, the Appeals Council denied review. (PageID.22-26). Plaintiff timely filed for judicial review of the final decision on May 2, 2025. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to his conditions and resulting

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 6-1.

limitations. Instead of summarizing that information here, the Court will refer and cite to the transcript as necessary in its discussion of the parties' arguments.

**B. The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 1, 2019. (PageID.38). At Step Two, the ALJ found that he has the severe impairments of obesity, benign paroxysmal positional vertigo, degenerative disc disease of the cervical spine, inguinal hernia, panic disorder, adjustment disorder, anxiety, and depression. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.39).

The ALJ then assessed Plaintiff's RFC, concluding that he is capable of performing light work, with the following additional limitations: can lift or carry 10 pounds frequently and 20 pounds occasionally; can stand or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can push or pull within the aforementioned weight restrictions; can occasionally climb, balance, stoop, and crawl; can frequently reach, except can only occasionally reach overhead; can occasionally have exposure to vibration; can attend and concentrate sufficiently to carry out simple work instructions; can perform work that does not require team or tandem tasks or interaction with the public; and can

occasionally tolerate changes in a routine work setting. (PageID.41).

At Step Four, the ALJ found that Plaintiff is unable to perform any of his past relevant work. (PageID.47). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff is capable of performing the light jobs of inspector (180,000 jobs in the national economy) and assembler (160,000 jobs). (PageID.48). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (*Id.*).

**C. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

Before this Court, Plaintiff argues that the ALJ erred in evaluating three medical opinions of record, as well as his subjective complaints. (ECF No. 10, PageID.1416-31). For the reasons set forth below, the Court disagrees.

*1. Substantial Evidence Supports the ALJ's Evaluation of the Medical Source Opinion Evidence*

In his motion for summary judgment, Plaintiff argues that the ALJ failed to conduct

a proper evaluation of three medical opinions in the record – those of the consultative examiner, Nathalie Menendes, Psy.D., Plaintiff's treating therapist David Hecht, LMSW, and Plaintiff's treating physician Altamash Amin, M.D. (*Id.*, PageID.1416-28).

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings." *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL 992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)). In this case, the Court finds that the ALJ's evaluation of the medical opinions at issue is supported by substantial evidence.

*a. The Opinion of Consultative Examiner Dr. Menendes*

On February 19, 2020, Plaintiff underwent a psychological consultative examination with Nathalie Mendendes Psy.D. (PageID.385-88). At the time, Plaintiff was

35 years old, and he reported having been diagnosed with anxiety in his early twenties. (PageID.385). He reported panic attacks that "can come out of the blue" and are "so severe, he has sometimes wished he would die." (*Id.*). He reported living with his parents and son, with whom he shared custody with his ex-wife, and said that he had several friends but did not spend much time with them because of his anxiety. (PageID.386).

On mental status examination, Plaintiff's contact with reality was good; he had adequate insight; his thoughts were spontaneous, logical, and organized; his affect was appropriate; he was oriented to time, place, and person; and he stated that he felt happy and was not depressed. (PageID.386-87). He did endorse some mildly paranoid thoughts, although Dr. Menendes believed them to be a factor of severe anxiety. (PageID.387). He could repeat 6 numbers forward and 5 numbers backward and could recall 3 out of 3 objects after 3 minutes, but he struggled with some calculations. (*Id.*). Dr. Menendes diagnosed Plaintiff with panic disorder and unspecified adjustment disorder, characterized his prognosis as poor, and opined as follows:

> Based on today's evaluation, the claimant will be able to understand and remember simple one step instructions and work procedures. He will be able to understand complex and multistep instructions and work procedures but will have moderate difficulty remembering them. He will have marked difficulty concentrating and persisting through a typical 8 hour day. He will have marked difficulty maintaining socially appropriate behavior. He will be able to adjust to changes in his routine and environment.

(PageID.388).

The ALJ found Dr. Menendes' opinion "persuasive in part as [her] assessment of [Plaintiff's] cognitive function is generally supported by her clinical findings, but the

assessments of concentration, persistence, and social interaction are not supported by her clinical observations, and they are inconsistent with a preponderance of the evidence including the vast majority of therapy progress notes of record, which do not suggest such severe limitations." (PageID.46) (internal citations omitted). Plaintiff now contends that the ALJ failed to properly evaluate Dr. Menendes' opinion; however, the Court finds no reversible error in this regard.

Plaintiff argues that Dr. Menendes' opinion is both supported by her own findings and consistent with the record evidence and that the ALJ therefore erred in finding unpersuasive that portion of her opinion that Plaintiff would have marked difficulty concentrating and persisting through a typical 8 hour day, as well as marked difficulty maintaining socially appropriate behavior. (ECF No. 10, PageID.1418-21). Plaintiff recites a litany of evidence purportedly supporting his argument, saying:

> The ALJ concluded that the examination results only partially supported the opined limitations without discussing the substance of the examination itself. Indeed, review of the examination report lends support to the opinion. [Plaintiff] endorsed mild paranoi[a] and panic attacks that occur "out of the blue," which supports a marked restriction in [his] ability to maintain socially appropriate behavior. During examination, he experienced some issues with calculations and could repeat six numbers forward but only five numbers backward, which supported limitations to concentration and persistence.
>
> Further, the opinion is consistent with the record. [Plaintiff] presented to his treating physician [Dr. Amin] in 2021 seeking a medication increase after experiencing severe panic attacks which occurred up to five times daily and felt "like a heart attack." He continued to relate complaints of anxiety and depression to his treating physician at a follow up appointment later that year. [Plaintiff] began individual psychotherapy appointments with Mr. Hecht in October 2021, where he endorsed a history of anxiety symptoms going back to 2013 and

> indicated he may be experiencing PTSD symptoms in the form of recurring thoughts and flashbacks. [Plaintiff] attended a total of 34 appointments with Mr. Hecht in connection with his anxiety and PTSD, and concluded services in January 2024. Finally, [Plaintiff] reported to the Emergency Department in June 2022 in connection with symptoms of anxiety. He related chest tightness and sweating. He also related experiencing a panic attack that caused chest pain, blurred vision, and numbness of the left upper extremity.
>
> Additionally, the opinion is consistent with that of treating therapist Mr. Hecht. For example, Dr. Menendes's opinion that [Plaintiff] has marked restrictions in his ability to concentrate and persist through a typical workday is consistent with Mr. Hecht's opinion [discussed below] that [Plaintiff] had no ability to complete a normal workday and workweek without interruptions and no ability to perform at a consistent pace without an unreasonable number and length of rest periods, and could not meet competitive standards in maintaining attention for a two-hour segment. Additionally, Dr. Menendes's opinion that [Plaintiff] had marked difficulties maintaining socially appropriate behavior is consistent with Mr. Hecht's opinion that [Plaintiff] could not work in coordination with others, accept instructions, or get along with co-workers or peers, and could not meet competitive standards in his ability to interact appropriately with others. However, the ALJ does not consider the consistency of the opinions to one another before concluding they are inconsistent with the record. This omission overlooks the consideration that an opinion which is more consistent with the evidence from other medical sources and nonmedical sources is more persuasive.

(ECF No. 10, PageID.1418-20) (internal citations omitted).

Despite Plaintiff's recitation of evidence he believes supports Dr. Menendes' opinion, the Court's role is not to reweigh the evidence. Indeed, the law is clear that, if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion[.]" *Cutlip*, 25 F.3d at 286 (internal citations omitted); *see also Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir.

Dec. 1, 2022) (finding that the ALJ properly evaluated the persuasiveness of the medical opinions and the claimant's arguments were merely "classic examples of invitations to reweigh the evidence"). Thus, the question thus is not whether Plaintiff can identify evidence supporting Dr. Menendes' opinion, but rather, whether the ALJ's conclusion that Dr. Menendes' opinion is unpersuasive is supported by substantial evidence. The Court finds that it is.

First, as to supportability, the ALJ reasonably concluded that Plaintiff was cooperative and open during Dr. Menendes' examination, rapport was easy to establish, and his self-esteem was good. (PageID.40-41, 43) (citing PageID.385-88). Plaintiff described himself as happy and not depressed, stating that he had good motivation and was able to function independently. (*Id.*). His speech was normal and he denied sleep disturbance, though he reported mildly paranoid thoughts. (*Id.*). All of these facts belie Dr. Menendes' conclusion that Plaintiff would have marked difficulty concentrating and persisting through a typical 8-hour workday. *See* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinion(s) … will be.").

Second, as to consistency, the ALJ also reasonably concluded that Dr. Menendes' opinion that Plaintiff has marked difficulties in concentration and social functioning was inconsistent with the "vast majority of therapy progress notes of record … which do not suggest such severe limitations." (PageID.46). The ALJ thoroughly discussed Plaintiff's treatment records throughout his decision. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x

547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole when determining whether his consideration of the opinion evidence was consistent with the regulations). For example, the ALJ noted that Plaintiff complained of anxiety to his primary care provider, Dr. Amin, in April and May 2019 and requested refills of Klonopin, which he had been taking for five or six years at that time. (PageID.42) (citing PageID.480-81, 483). In June 2019, Plaintiff reported doing well overall and said that he had begun attending therapy. (PageID.42) (citing PageID.479). The ALJ noted that, a month later, Plaintiff reported continued symptoms but said that Klonopin helped him perform daily activities and go out in public; his dosage was increased from 0.5mg to 1.0mg, and he reported feeling fine with normal examinations through October 2019. (PageID.42) (citing PageID.469, 472, 475, 477). In November 2019, Plaintiff reported continued anxiety and occasional chest pain to Dr. Amin, though his examination remained unremarkable; sertraline was added as a medication. (PageID.42) (citing PageID.467-68). As the ALJ noted, Plaintiff continued to receive medication refills from Dr. Amin throughout 2020. (PageID.43) (citing PageID.436, 439, 441, 443-44, 446).

In January 2021, Plaintiff stated that his anxiety was "well controlled on Klonopin" (PageID.427), though he requested an increased dosage in medication in March 2021 due to an increase in anxiety with panic attacks (PageID.424). A month later, Plaintiff reported good relief with the increased medication dosage and, in August 2021, after briefly failing to refill his prescriptions, Plaintiff again reported doing well. (PageID.43) (citing PageID.412-13, 415-16, 422).

As the ALJ noted, therapy notes throughout 2022 and 2023 reflect that Plaintiff

often appeared with tearful affect, reporting continued interpersonal conflict with his ex-wife, but he also indicated that he attended activities with his son, such as going to Splash Village, signing up to be a soccer coach, and attending school functions.[4] (PageID.43-44) (citing PageID.839, 845). While Plaintiff reported financial challenges and conflict with his ex-wife, he also discussed the joy of parenting his son; he was able to attend a concert with friends "anxiety free" in September 2022, and he spent time with his family over the holidays in late 2022. (PageID.44) (citing PageID.969-70, 985).

The ALJ further noted that, in January 2023, Plaintiff reported staying with a friend, spending time up north, and going to a comedy show. (PageID.44) (citing PageID.1124). Throughout 2023 and 2024, Plaintiff continued to attend therapy appointments, discussing issues with dating, friendships, and his ex-wife, as well as grief stemming from his father's death. (PageID.44) (citing PageID.1374, 1376, 1378, 1380, 1382, 1386, 1388, 1390).

As the ALJ summed up:

> … while [Plaintiff] reported ongoing anxiety, he was improved on medications, and though they required adjustment at times he showed generally unremarkable mental status examinations during consultative examination, primary care and emergency room evaluations. He reported interpersonal relationship difficulties but was able to attend many public events including a concert and comedy show.

(PageID.45). Therefore, the ALJ reasonably concluded that Dr. Menendes' opinion that

---

[4] During this timeframe, Plaintiff did go to the emergency room once in June 2022 for a panic attack after having a confrontation with his ex-wife at his son's soccer game. (PageID.44) (citing PageID.1165-68). On examination he had a normal appearance, was in no acute distress, and was alert with normal mood, behavior, and thought content. (PageID.1165-68). He reported doing well and was asymptomatic on evaluation; he was advised to follow up with his primary care provider and psychiatry. (*Id.*).

Plaintiff had marked difficulties in concentration and social functioning was inconsistent with the "vast majority of therapy progress notes of record, which do not suggest such severe limitations." (PageID.46) (internal citations omitted).

In all, the ALJ reasonably considered the regulatory factors of supportability and consistency when evaluating Dr. Menendes' opinion, and the ALJ's analysis is supported by substantial evidence.[5] *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Longworth*, 402 F.3d at 595 ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (internal quotations omitted).

*b. The Opinion of Treating Therapist Hecht*

On June 8, 2022, Plaintiff's therapist, David Hecht, LMSW, completed a Medical Source Statement, indicating that Plaintiff suffers from PTSD, generalized anxiety disorder, and panic disorder. (PageID.882). When asked to describe relevant clinical findings, Mr. Hecht indicated that Plaintiff "presents [with] symptoms of elevated heart rate, blurred vision, difficulty breathing, dissociation from past trauma, elevated psychological distress due to memories of past trauma, frequent cognitive distortions, [and] negative emotional state." (*Id.*). He characterized Plaintiff's prognosis as fair, saying that improvement was likely with continued treatment and additional resources. (*Id.*).

[5] Plaintiff also argues that Dr. Menendes' opinion should have been deemed persuasive because it was consistent with the opinion of his therapist, Mr. Hecht. (ECF No. 10; PageID.1420-21). As set forth below, *infra* at 14-17, the ALJ reasonably found Mr. Hecht's opinion unpersuasive. (PageID.46). Thus, any consistency between the two opinions is irrelevant.

Mr. Hecht opined that Plaintiff has no useful ability to function in most areas of mental abilities and aptitudes needed to do unskilled work because he is "unable to conduct [and] execute work tasks in a timely fashion." (PageID.884). He further opined that Plaintiff is unable to meet competitive standards to interact appropriately with the general public or maintain socially appropriate behavior. (PageID.885). Plaintiff was expected to be off task more than 25% of the typical workday and would miss four or more days of work per month. (PageID.883, 885).

The ALJ evaluated Mr. Hecht's opinion, finding it:

> … unpersuasive as it is not well supported by the author's own therapy progress notes, and it is inconsistent with the objective medical findings of record including those in the consultative psychological examination report. The record shows [Plaintiff] took medication and went to therapy which he found helpful and showed normal affect, and clear, fluent speech on examinations. During [the] consultative exam he reported he drove himself and was able to perform daily activities such [as] cleaning and laundry. [Plaintiff] was described as cooperative and open and had good hygiene. Rapport was easy to establish, and his self-esteem was good. He stated he was happy and not depressed, had good motivation and was able to function independently. His speech was normal, and he denied sleep disturbance but endorsed mildly paranoid thoughts, that appeared to be a factor of severe anxiety. Treatment notes show he reported spending time with his [] [sic] son, taking him to Splash Village, signing up to be a soccer coach, and attending a school function for his son and building him an arcade. He also reported staying with a friend, spending time up North and going to a comedy show and attending a concert with friends.

(PageID.46) (internal citations omitted).

Plaintiff now argues that Mr. Hecht's opinion is both supported by his own findings and consistent with the record evidence, and that the ALJ therefore erred in finding it unpersuasive. (ECF No. 10, PageID.1421-23). Specifically, Plaintiff argues:

> The ALJ neglected to evaluate the evidence provided by Mr. Hecht in support of his opinion. Mr. Hecht specifically cited 21 symptoms in support of the opinion, including anhedonia, decreased energy, feelings of guilt, generalized persistent anxiety, mood disturbance, concentration difficulty, recurrent recollections of traumatic experience, psychomotor agitation, persistent disturbances of mood or affect, apprehensive expectation, emotional withdrawal, persistent irrational fear, unstable interpersonal relationships, motor tension, flight of ideas, unrealistic interpretation of physical signs, vigilance/scanning, easy distractibility, memory impairment, sleep disturbance, and recurrent severe panic attacks.
>
> Mr. Hecht's opinion is also consistent with the record. [Plaintiff] began individual psychotherapy appointments with Mr. Hecht in October 2021 in connection with a history of anxiety symptoms going back to 2013. He also related experiencing PTSD symptoms in the form of recurring thoughts and flashbacks. [Plaintiff] attended a total of 34 appointments with Mr. Hecht in connection with his anxiety and PTSD between October 2021 and January 2024. [Plaintiff] also reported to the Emergency Department in June 2022, having experienced a panic attack that caused chest pain, blurred vision, and numbness of the left upper extremity.
>
> Mr. Hecht's opinion is also consistent with other opinions in the record, which further substantiates its persuasiveness. As discussed [above], Mr. Hecht's opinions regarding [Plaintiff's] inability to complete a normal workday, concentrate for two hour segments, [and] maintain socially appropriate behaviors are consistent with similar limitations opined by consultative examiner Dr. Menendes. Additionally, Mr. Hecht's opinion that [Plaintiff] would be absent from work more than four days per month is consistent with treating source Dr. Amin's opinions assessing the same limitation.

(*Id.*) (internal citations omitted).

Plaintiff's arguments lack merit. While Plaintiff asserts that the ALJ did not adequately consider certain evidence, the Court finds that the ALJ reasonably and properly considered both the supportability of Mr. Hecht's opinion with his own treatment notes and its consistency with the other evidence in the record. (PageID.46). The ALJ pointed

to specific evidence in the record that is inconsistent with or unsupportive of Mr. Hecht's extremely restrictive opinion, and his analysis of that evidence was reasonable. (*Id.*). As noted above, this includes Plaintiff's performance at therapy sessions and at the consultative exam, his ability to drive and perform activities of daily living such as cleaning and laundry, his statements that he was not depressed and able to function independently, and the fact that he was able to spend time with his son and friends in a variety of settings. (*Id.*) (citing PageID.385-88, 805-33, 838-79, 963-1109). Plaintiff's mere identification of some contrary evidence does not undermine the ALJ's analysis. *See Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion") (internal quotations omitted). Thus, the Court finds no error in the ALJ's evaluation of Mr. Hecht's opinion.

*c. The Opinion of Treating Physician Dr. Amin*

Plaintiff also challenges the ALJ's evaluation of the opinion of his primary care physician, Dr. Amin. (ECF No. 10, PageID.1424-28). On June 14, 2022, Dr. Amin completed a Medical Source Statement, indicating that Plaintiff suffers from anxiety and panic attacks. (PageID.887). When asked to list Plaintiff's symptoms, Dr. Amin identified chest pain, blurred vision, and numbness in his left upper extremity – symptoms that can

"occur for minutes to hours depending on the trigger of [the] panic attack." (*Id.*). Dr. Amin opined that Plaintiff is limited to sitting, standing, or walking about 2 hours in an 8-hour workday; can lift 50 pounds occasionally; needs daily breaks for 30-45 minutes; is incapable of even "low stress" jobs; and would miss more than four days per month. (PageID.888-90).

The ALJ evaluated Dr. Amin's opinion, finding the extremely restrictive limitations he imposed:

> … unpersuasive as [the opinion] was not well supported by explanation and inconsistent with a preponderance of the evidence including the imaging results and physical examinations of record showing normal gait, strength and range of motion.

(PageID.45) (internal citations omitted).

Again, Plaintiff argues that the ALJ's supportability and consistency analyses are flawed because his "failure to discuss all of the evidence in the examination reports" necessarily means that he did not "develop a logical bridge between the evidence and the conclusion." (ECF No. 10, PageID.1425) (citing *Tina P. v. Comm'r of Soc. Sec.*, No. 23-12419, 2024 WL 1660527, at *11 (E.D. Mich. Apr. 17, 2024)). Specifically, Plaintiff argues, in relevant part:

> … Dr. Amin's opinion is consistent with [Plaintiff's] record of treatment for spine and shoulder issues. [Plaintiff] reported to the Emergency Department in connection with complaints of neck and bilateral shoulder pain in July 2022, though examination results were within normal limits and did not reveal any spinal deformities or tenderness. The following month, he reported pain radiating into the left upper extremity and constant back pain that had developed over the previous month. During examination, tenderness was noted at the mid cervical spine and [Plaintiff] experienced minor tenderness to palpation of the shoulder.

> [Plaintiff] underwent an MRI of the cervical spine in September 2022, which revealed degenerative changes at C4/5, C5/6, and C6/7.
>
> In January 2023, [Plaintiff] reported to Ascension Medical Group Neurosurgery and demonstrated diminished reflexes in the Biceps, brachioradialis, quadriceps, and Achilles. He underwent an MRI of the cervical spine, which revealed some reversal of the normal cervical lordosis and multiple degenerative changes at C3/4, C4/5, C5/6, C6/7, and C7/T1.
>
> In February 2023, [Plaintiff] underwent a CT of the cervical spine, which revealed mild reversal of the normal cervical lordosis, mild disc space height loss at C5/6, left lateral disc bulge at C4/5, and moderate disc bulge at C5/6 with mild central canal stenosis. The following month, [Plaintiff] reported for testing of the cervical spine. He related ongoing left shoulder pain and weakness in the left bicep, though physical examination was unremarkable and showed improvement in [Plaintiff's] left upper extremity radiculopathy. [Plaintiff] indicated his most significant symptom was low back pain, which was exacerbated by axial loading positions.

(ECF No. 10, PageID.1425-26) (internal citations omitted).

Plaintiff argues, then, that the ALJ's "reliance on selective examination results while omitting consideration of the results of objective testing suggests the ALJ engaged in improper picking and choosing from the record to support the RFC." (*Id.*, PageID.1426) (citing cases). Plaintiff further argues that the ALJ's "failure to explain whether this other evidence was considered or why it led [him] to reject the opinion frustrates the ability to determine whether the RFC is supported by substantial evidence." (*Id.*, PageID.1427) (citing *Dene W. v. Comm'r of Soc. Sec.*, No. 22-12861, 2023 WL 5939824, at *6 (E.D. Mich. Sept. 12, 2023) ("Although the ALJ might have been able support that choice [to accept or reject opinion evidence] with substantial evidence, without knowing what evidence (if any) the ALJ considered, or why that evidence led the ALJ to reject the opinion, a court could not say with any 'substantial' certainty that the ALJ would have

reached the same conclusion if the ALJ had articulated his or her reasons for rejecting the opinion.”)).

Again, however, Plaintiff is merely asking this Court to reweigh the evidence of record, which is not appropriate. *See Nasser*, 2022 WL 17348838, at *2 (finding that the ALJ properly evaluated the persuasiveness of the medical opinions and the claimant's arguments were merely "classic examples of invitations to reweigh the evidence"). Though Plaintiff might be able to point to some evidence supporting Dr. Amin's opinion, the ultimate question before the Court is whether the ALJ's conclusion that Dr. Amin's opinion is unpersuasive is supported by substantial evidence. The Court finds that it is.

In his decision, the ALJ detailed the medical record – including most, if not all, of the evidence cited by Plaintiff. For example, the ALJ noted that, at an emergency room visit in June 2022, Plaintiff's physical examination showed no abnormalities with normal range of motion, no swelling, no tenderness, and no sensory deficit or motor weakness (PageID.44) (citing PageID.1165-68). The ALJ also noted that Plaintiff complained of neck pain in August 2022 and while some tenderness was noted, x-rays were normal and no weakness was observed, despite Plaintiff's reports. (PageID.44) (citing PageID.986, 989-90). A month later, Plaintiff reported improvement, though he had continued neck pain, but he was not open to even trying physical therapy. (PageID.44) (citing PageID.983). In October 2022, Plaintiff was referred to neurosurgery after an MRI showed a "sizeable left lateral disc bulge at C4-C5 that appeared to be grossly impinging on the ventral intraspinal left C4 nerve root; and central disc protrusion at C5-C6 mildly effacing

the ventral central cord without any cord signal abnormality."[6] (PageID.44) (citing PageID.1010).

However, when Plaintiff went for a neurosurgical evaluation in January 2023, he stated that his symptoms, including numbness in his hands, lack of strength in his arms, and cervical neck pain, had all improved. (PageID.44) (citing PageID.1111-13). Given this improvement, the neurosurgeon ordered a repeat MRI of Plaintiff's cervical spine, as well as a CT of his cervical spine. (PageID.1113). At a follow-up visit in March 2023, the doctor noted that Plaintiff's repeat imaging did look like Plaintiff's cervical degenerative disc disease herniation had "improved compared to prior"; for this reason, the neurosurgeon determined that because Plaintiff had "drastically improved," operative intervention was not recommended. (PageID.1363-64).

Thus, while Plaintiff argues that the evidence in the record is consistent with Dr. Amin's opinion, he does not point to any evidence that the ALJ mischaracterized or failed to consider. (ECF No. 10; PageID.1425-26). And, again, "[u]nless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record, [the Court] must affirm the Commissioner's conclusions." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Here, where the ALJ reasonably considered the evidence as a whole and properly analyzed Dr. Amin's opinion using the appropriate regulatory factors, Plaintiff has not shown error warranting remand. *See*

[6] At this same visit to Dr. Amin in October 2022, Plaintiff's joints showed good mobility on examination, with no motor or sensory deficits. (PageID.972). Dr. Amin advised Plaintiff that he was allowed to walk and go hiking as it would not exacerbate his pain. (PageID.974).

*Longworth*, 402 F.3d at 595 ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (internal quotations omitted).

### 2. *The ALJ Did Not Commit Reversible Error in Evaluating Plaintiff's Subjective Complaints*

In his decision, the ALJ recognized that Plaintiff alleged disabling physical and mental symptoms but concluded that his statements to this effect were not entirely consistent with the evidence of record. (PageID.41-42). Plaintiff now challenges the ALJ's evaluation of his subjective complaints, claiming he "used boilerplate language" and improperly relied solely on objective medical evidence. (ECF No. 10, PageID.1429-31). The Court disagrees.

When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014). First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Second, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." *Id.*; *see also* Soc. Sec. Rul. ("SSR") 16-3p, 2016 WL 1119029, at *4 (March 16, 2016).

In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must

look to medical evidence, statements by the claimant, other information provided by medical sources and other persons, and any other relevant evidence in the record. *See* SSR 16-3p, 2016 WL 1119029, at *4. Specifically, beyond medical evidence, the ALJ should consider seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7. The ALJ need not exhaustively discuss each of these factors – or all of the evidence in the record, *see Robinson v. Comm'r of Soc. Sec.*, No. 20-12117, 2022 WL 1043869, at *3 (E.D. Mich. Jan. 18, 2022) – but his decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9.

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (PageID.42). Plaintiff first challenges the ALJ's use of this

"boilerplate language" in evaluating his subjective complaints. (ECF No. 10, 1429-30). Although Plaintiff argues that "[t]he Sixth Circuit has found this language can be reversible error" (*id.*, PageID.1429), this argument ignores the pages and pages of substantive analysis that follow the "boilerplate language." In other words, while boilerplate language without further analysis may be reversible error, that doctrine does not apply here where, as discussed below, the ALJ conducted a reasonably supported substantive evaluation of Plaintiff's complaints, explicitly considering many of the relevant factors.

For example, as noted above, the ALJ discussed the medical evidence in the record and reasonably concluded that "while [Plaintiff] reported ongoing anxiety, he was improved on medications, and though they required adjustment at times he showed generally unremarkable mental status examinations during consultative examination, primary care and emergency room evaluations." (PageID.45). In addition, that ALJ noted that although Plaintiff reported "interpersonal relationship difficulties," he was able to attend many public events, including a concert and comedy show. (*Id.*).

As for Plaintiff's physical impairments, the ALJ reasonably noted that treatment records showed "improvement on MRI and clinical examination was unremarkable with normal strength and range of motion."[7] (*Id.*). The ALJ also noted that surgical intervention

[7] Plaintiff argues that the ALJ erred when he relied on these treatment records to reject his statements regarding the severity of his physical impairments. (ECF No. 10, PageID.1430). Specifically, Plaintiff asserts that the ALJ's conclusion was "based on a mere summary of portions of [Plaintiff's] record of treatment." (*Id.*). This argument lacks merit. There is nothing objectionable about the ALJ summarizing medical records in support of his conclusion. Moreover, the ALJ's "summary" supports his conclusion that, contrary to Plaintiff's subjective complaints, his extensive course of care shows a fairly routine and conservative pattern. (PageID.44-46).

was not recommended, and Plaintiff refused both injections and physical therapy. (*Id.*). Moreover, elsewhere in his decision, the ALJ discussed how Plaintiff reported being independent in his activities of daily living and being able to perform chores such as laundry and cleaning and that he denied side effects from his medications.[8] (PageID.40, 42-43, 46).

In other words, the ALJ properly considered both the objective medical evidence in the record and evidence relating to the other regulatory factors such as improvement with medication, Plaintiff's lack of side effects, his daily activities, and his conservative treatment. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (consideration of objective medical evidence when evaluating subjective complaints), (c)(3)(i), (iv), (v) (consideration of daily activities, treatment, and effectiveness and side effects of medication). The ALJ's evaluation of Plaintiff's subjective complaints did not consist of mere "boilerplate language"; rather, he carefully weighed the medical evidence and Plaintiff's testimony, and his conclusions were reasonable. As such, they should be accorded deference by this Court. *See Masterson v. Comm'r of Soc. Sec.*, No. 24-5512, 2025 WL 317501, at *2 (6th Cir. Jan. 28, 2025) ("'[i]t is for the administrative law judge, not the reviewing court, to judge the

[8] Plaintiff also challenges this aspect of the ALJ's analysis, arguing that the ALJ ignored statements in his Adult Function Report that he avoids people when he has to go outside, and that his impairments have precluded him from participating in social activities he used to enjoy. (ECF No. 10, PageID.1430). However, an ALJ is not required to discuss every piece of evidence in the record, and nothing about the evidence cited by Plaintiff materially undermines the substantial evidence on which the ALJ's decision is based. *See Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) ("And we don't require an ALJ to discuss every piece of evidence in the record.... We simply determine whether there is substantial evidence in the record to support th[e] conclusion.") (internal quotations omitted).

consistency of a claimant's statements'") (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020)).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision will be affirmed.

**E. Conclusion**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment **(ECF No. 10)**; **GRANTS** the Commissioner's Motion for Summary Judgment **(ECF No. 13)**; and **AFFIRMS** the decision of the Commissioner of Social Security.

**IT IS SO ORDERED.**

Dated: September 22, 2026
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 22, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager